UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NANCY E ORTIZ,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:13-cv-2091-KJN

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from August 6, 2010, the date plaintiff's application was filed, through the date of the final administrative decision.  (ECF No. 14.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 19.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 22.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 10.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I. BACKGROUND

Plaintiff was born on December 12, 1967, attended school until the eleventh grade, obtained a GED, and previously worked as a cashier and certified nursing assistant.[2] (Administrative Transcript ("AT") 45, 216.)  On August 6, 2010, plaintiff applied for SSI, alleging that she was unable to work as of January 15, 2003.  (AT 20, 163-69.)  On December 7, 2010, the Commissioner determined that plaintiff was not disabled.  (AT 20, 108-14.)  Upon plaintiff's request for reconsideration, the determination was affirmed on June 23, 2011.  (AT 20.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 24, 2012, and at which plaintiff (represented by counsel) and a vocational expert ("VE") testified.  (AT 20, 38-71.)

In a decision dated June 18, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from August 6, 2010, the date plaintiff filed her application, through the date of the ALJ's decision.  (AT 20-33.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 13, 2013.  (AT 1-6.)  Thereafter, plaintiff filed this action in federal district court on October 9, 2013 to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II. ISSUES PRESENTED

Plaintiff raises the following issues: (1) whether the ALJ erred in evaluating the medical evidence in the record when making his residual functional capacity ("RFC") determination; (2) whether the ALJ erred in adopting the RFC findings of a previous ALJ's decision that denied plaintiff's previous application for SSI; and (3) whether the ALJ made an improper credibility determination with respect to plaintiff's testimony.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

   A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the

3

engaged in substantial gainful activity since August 6, 2010, plaintiff's alleged disability onset date.  (AT 22.)  At Step Two, the ALJ determined that plaintiff had the following severe impairments: "early/mild degenerative joint disease, polyarthropathy, obesity, and depression." (Id. (citations omitted).)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 23.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work, as defined in 20 CFR 416.967(a), except the claimant is limited to performing no more than frequent bilateral handling and fingering; the claimant is moderately limited in her ability to interact appropriately with the general public and to complete a normal workday or work week without interruption from psychologically based symptoms (moderate is defined as being not extreme or excessive and being within reasonable or average limits.)

(AT 26.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 32.)  Finally, at step five, the ALJ, based on the VE's testimony, determined that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, specifically, order clerk, ticket counter, and charge account clerk.  (AT 33, 65.)

/////

---

claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from August 6, 2010, through the date of the ALJ's decision. (AT 33.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ Erred in Determining Plaintiff's RFC*

Plaintiff first asserts that the ALJ improperly determined her RFC because the ALJ improperly assigned "little weight" to the opinions of Dr. Adeyemo, plaintiff's treating psychiatrist, and Dr. Powell, plaintiff's treating rheumatologist.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001), except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient

1    to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

2                                    a.    Dr. Adeyemo

3        Dr. Adeyemo treated and prescribed medications for plaintiff on a number of occasions
4    beginning in 2009 and continuing throughout the relevant period.  During her initial appointment
5    with plaintiff, Dr. Adeyemo noted that plaintiff had a history of depression, mood swings,
6    irritability, and difficulties with concentration and decision making.  (AT 343.)  Over the course
7    of the rest of 2009, Dr. Adeyemo prescribed plaintiff with Lamictal, Abilify, Geodon, Zyprexa,
8    and Risperdal.  (AT 343, 354, 378, 393, 397.)  Dr. Adeyemo switched plaintiff's medications
9    when plaintiff complained of side effects such as swelling in her hands and feet, hypertension,
10   and chest pain. (AT 354, 378, 393, 397.)

11       On March 31, 2010, Dr. Adeyemo issued a medical report with respect to plaintiff's
12   mental condition.  (AT 522-24.)  In this report, Dr. Adeyemo noted that her clinical findings
13   showed that plaintiff was "depressed, guarded, . . . [had] racing thoughts, [and had] poor
14   concentration."  (AT 522.)  Dr. Adeyemo diagnosed plaintiff with bipolar disorder, noted that she
15   had been treating plaintiff with medication, and that plaintiff's response to this treatment was
16   "fair."  (Id.)  Dr. Adeyemo also noted that plaintiff's prognosis was "fair."  (Id.)  With respect to
17   plaintiff's ability to perform work-related activities, Dr. Adeyemo opined that plaintiff had a
18   "poor" ability to:  follow work rules, relate to co-workers, use judgment, interact with
19   supervisors, deal with work stress, and maintain attention and concentration.  (AT 524.)  She
20   further opined that plaintiff had a "fair" ability to function independently and no ability to deal
21   with the public.  (Id.)  Dr. Adeyemo also opined that plaintiff was "unable to function out in the
22   community . . . [and] to concentrate on any given function of daily living."  (AT 523.)
23   Ultimately, Dr. Adeyemo opined that plaintiff was "unable to maintain a job."  (Id.)  This opinion
24   was based on Dr. Adeyemo's treatment notes through December 18, 2009.  (Id.)

25       The ALJ gave the following reasons for assigning "little weight" to Dr. Adeyemo's
26   opinion:

27   > Dr. Adeyemo's opinion is not consistent with her noted clinical findings, in which
28   > she stated that the claimant was "doing fairly well."  Dr. Adeyemo noted the

> claimant was "doing well" and that her mood was fairly stable. Dr. Adeyemo also did not describe the contribution of the claimant's non-compliance with treatment.

(AT 31 (citations omitted).)

The ALJ's first reason, that Dr. Adeyemo's opinion was not consistent with her own clinical findings reflected in her treatment notes, constitutes a clear and convincing reason for assigning her opinion little weight and is supported by substantial evidence in the record. See Magallanes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)) ("[T]he ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'"). As an initial matter, the court notes that Dr. Adeyemo's March 31, 2010 opinion was issued prior to plaintiff's alleged onset date and was based entirely on Dr. Adeyemo's examinations conducted prior to that date. Dr. Adeyemo's treatment notes from later appointments with plaintiff during the period of alleged disability generally demonstrate that plaintiff's mental impairments were well controlled by the medication Dr. Adeyemo prescribed and that plaintiff's mental condition was steadily improving. (See,e.g., AT 468 (noting that plaintiff "[c]ontinues to do well" and is "[a]ble to tolerate Geodon"), 537 (noting that plaintiff is "doing fairly well," albeit with some "twitching at night" possibly attributable to medication), 539 (quoting plaintiff as "doing O.K." and noting that plaintiff's "mood [is] fairly stable" and that plaintiff is "tolerating Geodon"). Dr. Adeyemo's treatment notes indicate that the two times that plaintiff's mental state appeared to decline during the alleged disability period occurred when plaintiff was not taking her medications as prescribed and she was having problems dealing with issues relating to her landlord, family, trying to get a felony expunged, and trying to obtain SSI, rather than problems directly stemming from her mental health impairments. (AT 543, 554.) Once plaintiff returned to using her medications as prescribed, her mental condition began to improve. (See 548.) When Dr. Adeyemo's treatment records are viewed as a whole, they generally demonstrate that plaintiff's mental impairments were fairly well controlled with medication and do not support Dr. Adeyemo's March 31, 2010 opinion regarding plaintiff's workplace limitations.

////

In support of her argument, plaintiff also cites to a medical source statement dated May 24, 2012, provided by Dr. Adeyemo regarding the workplace limitations imposed by plaintiff's mental impairments. This opinion generally reiterated Dr. Adeyemo's March 31, 2010 opinion that plaintiff's abilities to maintain concentration, interact with coworkers, carry out job instructions, and withstand the general stress and pressures associated with full-time work were "poor." (AT 592.) Dr. Adeyemo further opined that plaintiff had "very minimal response to treatment so far." (Id.) However, the administrative record demonstrates that this second opinion was not in the medical record that was considered by the ALJ. Rather, it appears that plaintiff submitted this evidence for the first time to the Appeals Council, which considered the new evidence and determined that it was insufficient to warrant review of the ALJ's decision. (AT 1, 5.) "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012). Nevertheless, the ALJ could not have erred by not considering or rejecting this opinion because it was not in the record before him. Moreover, substantial evidence from the record still supports the ALJ's determination even in light of Dr. Adeyemo's second opinion. As noted above, Dr. Adeyemo's own treatment notes indicate that plaintiff's mental condition was generally well maintained by medication when plaintiff was using the medications as prescribed. In addition, the other medical evidence in the record concerning plaintiff's mental impairments generally supports the ALJ's findings. Accordingly, the second opinion's materiality does not rise to a degree of probative value such that, in light of it, substantial evidence no longer supports the ALJ's finding with regard to plaintiff's mental condition.[4]

////

---

[4] Because the ALJ's first stated reason for assigning little weight to Dr. Adeyemo's opinion was proper and sufficient to support the ALJ's determination, the court need not address the ALJ's reasoning regarding Dr. Adeyemo's failure to address plaintiff's non-compliance with her prescribed medication.

b.     Dr. Powell

Dr. Powell's treatment records date back to December 31, 2008, when he diagnosed plaintiff with fibromyalgia after an examination. (AT 325.) Dr. Powell examined plaintiff twice in 2009, and diagnosed her with chronic widespread pain and fibromyalgia. (AT 324, 339.) Dr. Powell also examined plaintiff on March 17, 2010, when he noted that plaintiff had "ecchymosis faded over central spine" and "diffuse allodynia." (AT 295, 337.) Dr. Powell again diagnosed plaintiff with chronic widespread pain and bipolar disorder. (Id.) Dr. Powell saw plaintiff again on October 28, 2010; he found that plaintiff had chronic widespread pain and prescribed Baclofen, a muscle relaxant. (AT 298.) Dr. Powell again examined plaintiff on December 29, 2010. Plaintiff stated that the Baclofen "helped her pain" and Dr. Powell found that plaintiff had lower back pain and again diagnosed her with fibromyalgia. (AT 297.)

In a medical source statement dated May 24, 2012, Dr. Powell opined that plaintiff's impairments of chronic widespread pain, bipolar disorder, and morbid obesity caused the following workplace limitations: the ability to sit, stand, or walk without rest or support for a period of no more than 30 to 60 minutes at a time; the ability to sit no more than 6 hours over the course of an 8 hour workday; the ability to stand or walk for fewer than 2 hours over the course of an 8 hour workday; the need to lie down and elevate her legs once or twice per day for up to 3 hours; and "limited mental processing capacity." (AT 536.) Ultimately, Dr. Powell opined that plaintiff's impairments preclude her from performing any full-time work at any exertional level and that plaintiff has been disabled to this degree since 2003. (Id.) The ALJ gave Dr. Powell's opinion "little weight" because the opinion "listed no diagnosis that would explain [plaintiff's] 'chronic pain' and 'myalgia'" and was "not supported by the medical evidence." (AT 31.)

The court finds that the ALJ erred in discounting Dr. Powell's opinion on the basis that it did not list a diagnosis that would explain plaintiff's chronic pain and myalgia. In Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004), the Ninth Circuit Court of Appeals instructed that:

> Fibromyalgia, previously called fibrositis, [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. [citations omitted] Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a

9

> pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. [citations omitted] Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. *The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.* The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date *there are no laboratory tests to confirm the diagnosis.* [citations omitted]

379 F.3d at 589-90 (emphasis added). Accordingly, the ALJ could not expect Dr. Powell to state a diagnosis explaining the existence of plaintiff's fibromyalgia and chronic pain on the basis of objective medical findings. Alvernaz v. Colvin, 2014 WL 1338314, at *7 (E.D. Cal. Apr. 2, 2014) (citing Benecke, 379 F.3d at 590, 594) ("[A] patient's subjective report of pain and symptoms is paramount for diagnosing fibromyalgia, and it is error for an ALJ to require objective evidence for a disease that eludes such measurement."). Furthermore, because Dr. Powell is a rheumatologist, a practitioner of the medical specialty relevant to the diagnosis of fibromyalgia and other rheumatic diseases, his opinion as to the existence of plaintiff's fibromyalgia should have been given further deference by the ALJ. Benecke, 379 F.3d at 594, n.4 ("Rheumatology is the relevant specialty for fibromyalgia. [citation omitted] Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community."). Consequently, the ALJ committed error by discounting Dr. Powell's opinion on this basis.

Nevertheless, the ALJ's erroneous first reason for discounting Dr. Powell's opinion was harmless error because the ALJ properly discounted Dr. Powell's opinion on the additional basis that it was not supported by the other medical evidence in the record. In particular, Dr. Powell's opinion conflicted with the clinical findings and opinion of consultative examiner Dr. Wagner.

Dr. Wagner examined plaintiff on April 11, 2011, and reviewed some of plaintiff's prior medical records. During the examination, Dr. Wagner observed that plaintiff was easily able to get up from a sitting position and walk at a moderate pace without assistance, sit comfortably during the entire time he questioned her about her history, and "easily able to bend over at the waist and take off her shoes." (AT 271.) Dr. Wagner also noted that plaintiff was "easily able to walk on her toes," albeit with complaints that she had ankle pain while doing so. (AT 272.) He

further noted that plaintiff's "gait is normal without antalgia," and that plaintiff generally exhibited a normal range of motion and motor strength. (AT 272-73.) Based on the examination and a review of some of plaintiff's prior records, Dr. Wagner diagnosed plaintiff with fibromyalgia, rheumatoid arthritis, and chronic obstructive pulmonary disease, which was determined to be not "terribly advanced." (AT 273.) Based on these findings, Dr. Wagner opined that plaintiff could stand or walk up to 6 hours; had no limitations regarding her ability to sit, or to engage in manipulative or postural activities; could lift and carry up to 50 pounds occasionally and 25 pounds frequently; and did not require the use of an assistive device to ambulate. (AT 274.)

Dr. Wagner's findings and opinion regarding the extent of the workplace limitations caused by plaintiff's physical impairments directly conflict with those of Dr. Powell. While plaintiff is correct that under the regulations the opinion of a treating specialist such as Dr. Powell is generally given more weight than that of other sources, see 20 C.F.R. § 416.927(c)(5), this does not mean that the ALJ was precluded from assigning little weight to this opinion on the basis that it conflicted with the opinion of another examining or treating doctor. Dr. Wagner's clinical findings and opinion regarding plaintiff's physical functional capacity, which was based on an independent physical examination, conflicted with Dr. Powell's opinion that plaintiff's impairments were so limiting as to preclude her from all full-time work. The ALJ was permitted to resolve this conflict by assigning lesser weight to Dr. Powell's opinion. Andrews, 53 F.3d at 1041 ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."). Furthermore, other medical evidence in the record with regard to plaintiff's physical impairments conflicted with Dr. Powell's opinion, further bolstering the ALJ's decision to assign that opinion little weight on the basis that it was not supported by the medical evidence. (e.g., AT 502-07 (November 16, 2010 reviewing physician's RFC assessment finding physical limitations consistent with non-disability), 508-19 (noting unremarkable physical examination results).) Substantial evidence in the record

supported the ALJ's specific and legitimate reason for discounting Dr. Powell's opinion.[5] Accordingly, the ALJ did not err in making this determination.[6]

        2. *Whether the ALJ's Reliance on the Previous ALJ's RFC Determination was in Error*

Plaintiff next argues that the ALJ erred by adopting the RFC determination of an ALJ that denied plaintiff's previous application for benefits. Plaintiff's argument is not well taken.

The principles of res judicata apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988); Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988). Social Security Acquiescence Ruling 96-4(9), adopting Chavez, applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjuducated period. Lester, 81 F.3d at 827. The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's RFC, age, education, or work experience. Id. at 827-28; Chavez, 844 F.2d at 693. For instance, evidence demonstrating "[a]n increase in the severity of the claimant's impairment

---

[5] The court also notes that plaintiff cites to medical records provided by Dr. Powell that were not before the ALJ, but were later considered by the Appeals Council, which determined that the additional records were insufficient to warrant reconsideration of the ALJ's decision. (AT 1-2, 5.) A review of these additional records demonstrates that they do not materially affect the ALJ's decision such that it is no longer supported by substantial evidence. See Brewes, 682 F.3d at 1159-60.

[6] Plaintiff also argues that the ALJ should have re-contacted Dr. Powell for clarification regarding the basis for his opinion. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, the record before the ALJ with regard to Dr. Powell's treating records and opinion was neither ambiguous nor inadequate to allow for proper evaluation of that evidence. Moreover, the ALJ left the record open to allow plaintiff to submit additional records from Dr. Powell and plaintiff's other doctors. (AT 41-42, 70.) In doing so, the ALJ satisfied his duty to ensure that the record was developed. Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that the ALJ satisfied his duty to develop the record when he left the record open after the administrative hearing to allow plaintiff to submit additional medical evidence). Accordingly, plaintiff's argument is without merit.

1   would preclude the application of res judicata." Lester, 81 F.3d at 827.  "In addition, the
2   Commissioner may not apply res judicata where the claimant raises a new issue, such as the
3   existence of an impairment not considered in the previous application." Id. (citing Gregory v.
4   Bowen, 844 F.2d 664, 666 (9th Cir. 1988)).

5         Here, plaintiff argues that there is sufficient evidence in the record of changed
6   circumstances because there is evidence in the record demonstrating an increase in the severity of
7   her physical and psychological impairments since the May 28, 2010 ALJ decision denying
8   plaintiff's previous application.  Specifically, plaintiff asserts that Dr. Adeyemo's 2010 diagnosis
9   of Bipolar Disorder and other mental impairments and prescription of multiple new psychotropic
10  medications indicate that plaintiff's mental impairments worsened since the prior ALJ's decision
11  to such a degree as to rebut the presumption of continuing nondisability.  Plaintiff further asserts
12  that Dr. Powell's treatment notes and an electrocardiogram results from May 2012 indicate
13  plaintiff's worsening physical condition "because it shows a new cardiac diagnosis that was not
14  considered by the ALJ."  (ECF No. 14 at 22.)

15        However, as noted above, the ALJ properly discounted the medical opinions of both Dr.
16  Adeyemo and Dr. Powell, which plaintiff attempts to rely upon to demonstrate changed
17  circumstances.  The ALJ properly discounted Dr. Adeyemo's opinion because her own treatment
18  notes denoted that plaintiff's mental condition was generally fairly stable during the course of her
19  treatment during the relevant period, indicating that plaintiff's mental condition had not declined
20  such as to indicate changed circumstances between the time of the previous ALJ's decision and
21  the decision at issue in this action.  The ALJ properly discounted Dr. Powell's opinion on the
22  basis that it conflicted with the other medical evidence in the record concerning plaintiff's
23  physical impairments, which demonstrated that plaintiff's physical condition was far less severe
24  than what Dr. Powell opined and that plaintiff's condition had not declined in a manner
25  constituting changed circumstances.  Beyond the properly discredited opinions of Dr. Adeyemo
26  and Dr. Powell, the medical evidence generally shows that plaintiff's condition did not materially
27  worsen such that plaintiff can overcome the presumption of continuing nondisability.  Finally, the
28  May 2012 electrocardiogram results to which plaintiff cites do not provide any new diagnosis as

plaintiff suggests and do not otherwise indicate changed circumstances.

Plaintiff also argues in her reply brief that Dr. Adeyemo's diagnosis of bipolar disorder after the prior ALJ's decision constitutes changed circumstances by itself because it raises a new impairment that was not considered by the previous ALJ. However, this argument lacks merit because the prior ALJ considered plaintiff's allegations that she had bipolar disorder and determined that the evidence did not support such a finding. (AT 91, 94.) Furthermore, the prior ALJ's decision expressly noted that Dr. Powell had diagnosed plaintiff with bipolar disorder, contrary to plaintiff's argument that there was no evidence of such a diagnosis before that ALJ. (AT 94.) Because the prior ALJ considered plaintiff's claim of bipolar disorder as well as medical evidence regarding a diagnosis of this impairment, the ALJ in the present case could give the prior ALJ's RFC determination preclusive effect even in light of Dr. Adeyemo's diagnosis made after the prior decision. Accordingly, the ALJ did not err in adopting the prior ALJ's RFC findings and ultimate determination that plaintiff was not disabled.

3.  *Whether the ALJ Made an Improper Credibility Determination with Respect to Plaintiff's Testimony*

Finally, plaintiff argues that the ALJ improperly found plaintiff's testimony to lack credibility when determining plaintiff's RFC.

A claimant's subjective statements and statements made by laypersons should be considered by the ALJ, but they need not always be accepted as true. In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task in assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. [But t]he claimant … need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.
>
> Second, if the claimant meets this first test, and there is no

> evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only be offering specific, clear and convincing reasons for doing so….

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).

However, "the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The "ALJ must . . . identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, inconsistencies in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. Id. at 959.

Here, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Plaintiff asserts that the ALJ's credibility determination was made in error because the ALJ's reasons for finding plaintiff not credible were not articulated in a manner that allows for meaningful judicial review. Plaintiff also asserts that the ALJ improperly discredited plaintiff's testimony solely on the basis that it was not supported by the medical evidence in the record. Plaintiff's arguments are not well taken.

Contrary to plaintiff's assertion, the ALJ discussed his reasons for deeming plaintiff not credible in a manner that permits meaningful judicial review. The mere fact that the ALJ spread his reasons for finding plaintiff not credible throughout the course of his discussion of the rest of the record as it related to plaintiff's RFC does not mean that the court is precluded from conducting a meaningful review. Furthermore, the ALJ did not discredit plaintiff's testimony regarding the severity of her symptoms solely on the basis that it was not supported by the

medical evidence.  To the contrary, a careful review of the ALJ's decision shows that the ALJ found that, although plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible for three reasons:  (1) her self-described activities were inconsistent with the alleged severity of her symptoms, (2) she made inconsistent statements about her symptoms, and (3) the medical evidence in the record indicated that plaintiff's impairments were not as limiting as she alleged.

Regarding the ALJ's first reason for finding plaintiff's testimony not credible, the ALJ provided several specific instances in which plaintiff's reported activities conflicted with plaintiff's allegations that her impairments were so severe as to be disabling.  For instance, the ALJ noted that plaintiff engaged in moderate exercise during the relevant period despite her claim that she suffered from debilitating musculoskeletal impairments.  (AT 28.)  The ALJ further noted that the fact that plaintiff testified that she is able to drive her daughter to school in the morning contradicted plaintiff's allegations of symptoms such as constant pain and fatigue.  (AT 27.)  The ALJ also highlighted the fact that plaintiff smokes half a pack of cigarettes per day conflicted plaintiff's testimony that her breathing problems were triggered by "fumes, smoke, and significant exercise" and that "smoking is obviously heavily contra-indicated for an individual with COPD."  (AT 28.)  In sum, the ALJ pointed to specific evidence regarding plaintiff's daily activities that suggested that plaintiff's impairments were not as debilitating as plaintiff alleged. See Mayes v. Massanari, 276 F.3d 453 (9th Cir. 2001) (finding that plaintiff's "testimony that she could do many daily activities," such as watching television, attempting to exercise, shopping, doing laundry, and sometimes going out to eat, suggested that plaintiff's alleged musculoskeletal impairments were not debilitating); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (upholding the ALJ's credibility determination when the ALJ "pointed to the contradictions between [plaintiff's] reported activities and his asserted limitations" as a reason for finding plaintiff not credible).  Although the evidence of some of plaintiff's daily activities may also admit of an interpretation more favorable to plaintiff, the ALJ's interpretation of these activities as they relate to the alleged severity of plaintiff's impairments was rational, and the

court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." Magallanes, 881 F.2d at 750; see Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while the ALJ's reasoning that the alleged severity of plaintiff's respiratory ailments was contradicted by the fact that plaintiff continued to smoke cigarettes was possibly flawed because plaintiff's continued use of cigarettes could be due to addiction, any such error was harmless because the ALJ also pointed to other daily activities that contradicted plaintiff's testimony regarding severity.)

With respect to the ALJ's second reason, the ALJ noted that plaintiff's "reports of symptoms are vastly more pronounced than those reported to Dr. [Francisco],[7] Dr. Powell, and Dr. Randhwa . . . [plaintiff's] reports of symptoms are consistent with exaggeration." (AT 27-28.) The ALJ pointed to a number of places in the record where plaintiff provided her doctors with information concerning her impairments and activities that suggested that plaintiff's impairments were less debilitating than she was alleging. For example, the ALJ noted that plaintiff told Dr. Randhwa during a physical examination that she had gone to San Jose Hospital on two occasions just prior to that examination for treatment of reported chest pain and shortness of breath but was sent home without any medical records because "everything was fine." (AT 28 (citing AT 557).) She further informed Dr. Randhwa that she engaged in "moderate" exercise. Id. The ALJ also noted that plaintiff's complaints to her doctors concerning the pain caused by her impairments was vague and nonspecific. (AT 27 (citing AT 273 (noting that plaintiff "refuses to give any localization of tender points" and that it was "difficult to get [plaintiff] to say what exactly" her reported chest and breathing problems were).) The ALJ could permissibly infer from plaintiff's inconsistent and vague statements concerning her impairments made to her doctors that plaintiff was not fully credible about the severity of her symptoms. See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (ALJ properly discredited plaintiff's testimony where plaintiff's testimony about daily living activities was much more limited than those reported prior to that

---

[7] The ALJ erroneously referred to Dr. Francisco as "Dr. Johnson" at several points in his decision. (AT 27-28.) The record contains no treatment records by a Dr. Johnson and it is clear that the ALJ's references to Dr. Johnson in his decision refer to the records provided by Dr. Francisco. (See AT 27.)

17

testimony); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's credibility determination when the ALJ discredited plaintiff's testimony, in part, on the fact that ""[t]he evidence regarding the nature, onset, location, frequency, intensity, and radiation of her alleged back pain [was] somewhat vague and non-specific."). Accordingly, this reason for discounting plaintiff's testimony was proper and supported by substantial evidence in the record.

With respect to the ALJ's third reason, while plaintiff is correct that an ALJ cannot find a claimant's testimony not credible solely on the basis that it conflicted with the objective medical evidence in the record, the ALJ in this case used the medical evidence in the record that conflicted with plaintiff's allegations concerning the severity of her symptoms to corroborate his determination that plaintiff's testimony was exaggerated, rather than relying on it as the sole basis for his credibility finding. Because the ALJ provided two other clear and convincing reasons for finding plaintiff not credible, the ALJ's discussion of inconsistencies between plaintiff's testimony and the findings of her treating and examining doctors in the medical record as an additional reason for finding plaintiff not credible was not in error. Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Because the ALJ provided several clear and convincing reasons supported by substantial evidence in the record, the ALJ did not err in his credibility analysis.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.

3. Judgment is entered for the Commissioner.

////
////
////
////

4. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

Dated: February 26, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE